UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>LARRY D. COMPTON; EL MONTE RENTS, INC., a California Corporation; and Does 1-10,<br><br>        Defendants. | No. 2:16-cv-02961-JAM-CKD<br><br>**ORDER GRANTING DEFENDANT EL MONTE'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Scott Johnson ("Johnson") brings this action against Defendants Larry Compton ("Compton") and El Monte Rents, Inc. ("El Monte"), alleging violations of the ADA and California law. ECF No. 1. El Monte now moves for summary judgment, ECF No. 8, which Johnson opposes, ECF No. 18.[1]

I.     FACTS AND PROCEDURAL BACKGROUND

Johnson, a quadriplegic, visited or attempted to visit property located at 4100 Florin-Perkins Road in Sacramento (the "Property") multiple times from June to November 2016. Compl.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for March 21, 2017.

1

¶ 20.[2]  Compton has owned the Property since 1997.  Pl.'s Resp.to El Monte's Statement of Undisputed Facts ("UF") # 1, ECF No. 18-1.  El Monte has never owned or leased the Property.  UF ## 2, 4.  In 2008, Compton leased (and still leases) the Property to his own company, Lucky Ventures.  UF # 3.

El Monte rents RVs through "dealer agents" such as Lucky Ventures.  UF ## 5, 6.  In 2008, El Monte and Lucky Ventures entered into a contract ("the Agreement"), in which Lucky Ventures agreed to make El Monte's RVs available at the Property.  Compton Decl., Exh. 1, ECF No. 10; UF ##6, 8.

The Agreement requires, among other things, that Lucky Ventures conduct business for at least six days per week, allow El Monte to install signs and advertising materials on the Property, comply with governmental laws and regulations, and defend and indemnify El Monte "from any and all claims . . . caused by or arising directly or indirectly out of any condition of the premises."  Agreement at 2, 4, 5, 7.  The Agreement also states: "El Monte RV hereby appoints [Lucky Ventures] its agent for the sole purpose of operating a non-exclusive rental agency at the aforesaid location in accordance with this Agreement and [Lucky Ventures] hereby accepts said appointment."  Agreement at 1.

El Monte argues it does not own, lease, or operate a business on the Property, and therefore Johnson cannot hold El

---

[2] Johnson alleges, but does not provide any evidence to show, he visited El Monte Rentals on several occasions and encountered barriers that violated the ADA.  The Court nevertheless accepts these facts as true for purposes of this motion because El Monte does not contest that Johnson visited the property and encountered barriers.

Monte liable for any of the Property's ADA violations. Mot. at 1.

## II. OPINION

The ADA states: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

Johnson concedes that El Monte never owned or leased the Property. UF #2, 4. The sole question presented by El Monte's motion, therefore, is whether El Monte "operates a place of public accommodation" so as to give rise to liability for ADA violations.

The ADA does not define "operates." The Ninth Circuit has stated "to operate means to put or keep in operation, to control or direct the functioning of, or to conduct the affairs of; manage." Lentini v. Cal. Cent. for the Arts, 370 F.3d 837, 849 (9th Cir. 2004) (citing Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1066 (5th Cir. 1995)) (internal quotation marks omitted). Put simply, courts must ask whether the defendant "had the power to facilitate any necessary accommodation." Id.

El Monte argues Johnson cannot hold El Monte liable for ADA violations because El Monte "has no control over the alleged discriminatory conditions at the Property." Mot. at 11. El Monte analogizes its relationship with Lucky Ventures and the Property to the franchisee/franchisor relationships in Neff, Lemmons v. Ace Hardware Corp., 2014 WL 3107842, at *1 (N.D. Cal.

3

Jul. 3, 2014), and U.S. v. Days Inn of Am., 1998 WL 461203, at *1 (E.D. Cal. Jan. 12, 1998), where the courts found the plaintiffs could not hold the franchisors liable for ADA violations at the franchisees' places of business. Mot. at 9-10.

The Fifth Circuit decided Neff, but the Ninth Circuit relied on it in Lentini for the definition of "operates" under the ADA, so it is relevant here. See Lentini, 370 F.3d at 849. The Neff court concluded Dairy Queen was not an operator under the ADA even though the franchising agreement gave Dairy Queen the right to set standards for building and equipment maintenance and to veto proposed structural changes at the franchise. Neff, 58 F.3d at 1068.

Similarly, in Lemmons, the agreement between Ace Hardware and its franchisee Berkeley Hardware required Berkeley Hardware "to abide by all federal and state laws, including those pertaining to disability access." Lemmons, 2014 WL 3107842, at *7. Ace could terminate the agreement if Berkeley Hardware did not comply with this requirement. Id. The Lemmons court held "while these contractual terms might provide an additional incentive to Berkeley Hardware to comply with federal and state laws, they do not grant Ace the 'specific control' necessary to impose liability on it." Id. The Court found "no evidence to show that Ace retained the authority under the agreement to dictate the physical layout of the store, or that otherwise participated in the alleged acts of discrimination against Plaintiff." Id. The court concluded, "[i]n the absence of such evidence," the plaintiff could not prove Ace "had control over the store such that it could ensure nondiscrimination against the

4

disabled." Id.

Lastly, in Days Inn, the agreement required the franchisee to "be built and operated in compliance with all local, state and federal laws, ordinances, rules, and regulations." Days Inn, 1998 WL 461203, at *5. The Court found Days Inn did not have "control over the discriminatory conditions" and therefore was not an operator under the ADA. Id. at *6.

Johnson argues these cases do not apply because they considered a franchisor/franchisee relationship, not a principal/agent relationship. Opp'n at 6. Johnson contends "unlike a franchisee [that] is financially independent from a franchisor . . . Lucky Ventures has to meet performance benchmarks and is paid with employee-like commissions and bonuses, and all the monies collected at the facility are *El Monte's monies*." Id. (emphasis in original). Johnson also argues "unlike the mere veto-power that Dairy Queen had over building modifications contemplated by its franchisee in Neff, here El Monte RV has the express right to instruct its agent to make 'capital improvements' that it deems necessary for the suitability and appearance of the property." Id. at 6-7.

Johnson's attempt to distinguish Neff, Lemmons, and Days Inn fails. The Agreement here requires Lucky Ventures to comply with state and federal laws, just like the agreements in Lemmons and Days Inn, which the courts found insufficient to impose ADA liability on the non-owner franchisors. Like the Lemmons and Days Inn agreements, nothing in the Agreement gives El Monte the power to dictate the "physical layout" or control any of the discriminatory conditions of the parking lot.

5

Additionally, Johnson has not provided any case law indicating that a court should treat principal/agent and franchisee/franchisor relationships differently under the ADA. Johnson also fails to provide any case law to support his contention that a principal can be liable for its agent's ADA violations.  Given the absence of such authority, the Court finds no reason to depart from the rulings in Neff, Lemmons, and Days Inn.

         Johnson also argues this case more closely resembles Lentini.  Opp'n at 8.  In Lentini, the Ninth Circuit upheld the district court's imposition of liability under the ADA against an individual defendant who was the Director of Center Sales and Event Services, was in a position of authority to dictate who could or could not be admitted to the theater in question, and who actively participated in the discriminatory acts by directing the disabled individual to leave the theater with her service dog.  Lentini, 370 F.3d at 849.  Johnson argues like the defendant in Lentini, "El Monte is . . . in a position of authority and has the ability to instruct its agent, Lucky Ventures, to make any physical changes at the facility to comply with the ADA."  Opp'n at 8.  But Lentini differs from this case in at least one major way: Johnson has not submitted any evidence that El Monte "actively participated in the discriminatory acts" against the disabled plaintiff.  Additionally, Johnson does not cite to any portion of the Agreement to support his contention that El Monte has the power to instruct Lucky Ventures to make physical changes to the Property to comply with the ADA. Accordingly, Lentini does not support liability against El Monte.

Johnson also argues a defendant "cannot contract away responsibility under the ADA." Opp'n at 4 (citing Botosan v. Paul McNally Realty, 216 F.3d 827 (2000)). But Botosan concerned whether an owner of property could "contract away" its responsibility under the ADA to the lessee of the property. Botosan, 216 F.3d at 834. The Botosan court held that the owner of the property was still liable for ADA violations because the ADA explicitly applies to "any person who owns . . . or leases to . . . a place of public accommodation." Id. at 832 (citing 42 U.S.C. § 12182). Unlike the defendant in Botosan, El Monte does not own the property or lease it to Lucky Ventures. Thus, Botosan does not apply.

Lastly, Johnson argues the Court would serve the purposes of the ADA by "holding principals responsible for the acts and omissions of their agents." Opp'n at 9. This policy argument is not persuasive because the Court need not engage in a policy analysis. With its ruling, this Court does not broadly hold that principals are not liable for omissions of their agents in ADA cases. Rather, the Court holds that *in this particular case*, the Agreement resembles agreements where other courts held the non-owner defendant could not be liable for ADA violations on the subject property. The Agreement between El Monte and Lucky Ventures does not give El Monte the "power to facilitate any necessary accommodation." Lentini, 370 F.3d at 849. The Agreement requires Lucky Ventures, not El Monte, to ensure compliance with applicable laws and regulations. Agreement at 7. The Court therefore declines to hold El Monte responsible for ADA violations on the Property.

III.  ORDER

The Court finds as a matter of law[3] El Monte does not "operate" the place of business at issue and therefore grants El Monte's motion for summary judgment.

IT IS SO ORDERED.

Dated: April 7, 2017

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

---

[3] Whether a franchisor's contractual rights under a franchise agreement demonstrate that the franchisor "operates" a place of public accommodation is a "purely legal" question and therefore "appropriately resolved through summary judgment." Neff, 58 F.3d at 1065.